IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHARLES AUSTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 08-204-SLR |
| ) | |
| STANLEY W. TAYLOR, JR., CARL C. ) | |
| DANBERG, RAPHAEL WILLIAMS, ) | |
| PHILLIP MORGAN, JOYCE TALLEY, ) | |
| CORRECTIONAL MEDICAL ) | |
| SERVICES, INC., and its JOHN DOE ) | |
| EMPLOYEES, ) | |
| ) | |
| Defendants. ) | |

Ronald Stoner, Esquire, Newark, Delaware. Counsel for Plaintiff.

Daniel A. Griffith, Esquire of Whiteford Taylor & Preston, LLC, Wilmington, Delaware. Counsel for Defendant Correctional Medical Services, Inc.

**MEMORANDUM OPINION**

Dated: March 24, 2009
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

Plaintiff Charles Austin ("plaintiff"), an inmate at the Howard R. Young Correctional Institution ("HRYCI"), Wilmington, Delaware, filed this civil rights complaint pursuant to 42 U.S.C. § 1983. (D.I. 1) Plaintiff also brings a claim for medical negligence under Delaware law. (*Id.*) Currently before the court is defendant Correctional Medical Service's ("CMS"'s) motion to dismiss. (D.I. 7) For the reasons that follow, the court grants in part and denies in part said motion.

## II. BACKGROUND

Plaintiff suffers from diabetes and concedes that he has received treatment at HRYCI for this condition, "including testing of his blood sugar levels and insulin injections two times a day." (D.I. 1 at ¶ 13) Plaintiff avers that a nurse known as "Nurse Beth" "used a single hypodermic needle/syringe to draw blood from other inmates for testing of blood sugar levels and then used the same needle/syringe to draw insulin from a multiple dose vial and inject inmates with said insulin." (*Id.* at ¶ 14) Also, according to plaintiff, six inmates receiving insulin during the April 10, 2006 and July 9, 2006 time frame have tested positive for hepatitis C. (*Id.* at ¶ 15) One of these inmates died of liver failure on March 12, 2008. (*Id.*)

Plaintiff brings claims for inadequate medical care in violation of § 1983 and medical negligence as proscribed by 18 Del. C. § 6801 against the following named defendants: the current and former DOC Commissioners; the current and former wardens of HRYCI; chief of the Bureau of Management Services for the DOC; CMS;

and CMS's unnamed employees. He seeks damages for "emotional pain and anguish" stemming from his possible exposure to diseases, as well as physical and future hepatitis testing, and any necessary treatment. (*Id.* at ¶ 17)

CMS provides healthcare services to prisoners housed at HRYCI under a contract with the Department of Correction of the State of Delaware ("DOC"). (D.I. 1 at ¶ 6) CMS moves to dismiss on the basis that CMS, as a state actor, is entitled to sovereign immunity on both claims. (D.I. 8 at 1)

## III. STANDARD OF REVIEW

In reviewing a motion filed under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007) (interpreting Fed. R. Civ. P. 8(a)) (internal quotations omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 1959.

## IV. DISCUSSION

### A. Eleventh Amendment Immunity

CMS moves to dismiss plaintiff's claims against it on the basis that CMS is immune from both claims pursuant to the Eleventh Amendment. The Eleventh Amendment shields states (and state actors) from suits by individuals absent their consent. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996).

In *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court established that municipalities and other local government units are "persons" subject to liability under § 1983, so long as they are "not considered part of the State for Eleventh Amendment purposes." *Id.* at 690 n. 54. In *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." 491 U.S. at 71. The *Will* Court confirmed the validity of *Monell* and limited its holding "only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes." *Id.* at 70. Against this backdrop, the Third Circuit has iterated several factors to be considered in analyzing an entity's status as "an arm of the state" entitled to Eleventh Amendment immunity. The "most important" of these factors is whether "any judgment [against the entity] would be paid from the state treasury." *See Independent Enterprises Inc. v. Pittsburgh Water and Sewer Authority*, 103 F.3d 1165, 1173 (3d Cir. 1997) (citation omitted). Other factors are the degree of autonomy the agency has, and the status of the agency under state law, for example, whether the entity is separately incorporated, can be sued in its own right, or is immune from state

taxation. *Id.* (citations omitted).

This is the appropriate framework against which an entity like CMS's Eleventh Amendment immunity claims must be evaluated. CMS, the party asserting immunity, bears the burden of production and persuasion. *See Febres v. Camden Bd. of Educ.*, 445 F.3d 227, 229 (3d Cir. 2006) (citation omitted). Despite having been named in hundreds of § 1983 actions, CMS has cited no cases in which a court has held CMS to be an "arm of the state" for Eleventh Amendment purposes. Turning to the Third Circuit's factors, CMS has neither asserted nor demonstrated that "any judgment [against it] would be paid from the state treasury." *See Independent Enterprises Inc.*, 103 F.3d at 1173. CMS is a corporate entity; there is no indication that CMS is immune from state taxation or that CMS does not act autonomously. *See id.* CMS has provided no evidence or argument in this regard and has failed to meet its burden to establish that it is an "arm of the state" immune from § 1983 liability.

The court pauses at this juncture to address two cases cited by CMS in which another entity, Civigenics, was deemed a state actor for Eleventh Amendment purposes. *See Castillo v. Costan*, Civ. No. 04-210-GMS, 2006 WL 891141, *3 (D. Del. Mar. 31, 2006); *Hamilton v. Civigenics,* Civ. No. 03-826-GMS, 2005 WL 418023, *4 (D. Del. Feb. 22, 2005). It is true that the court's rationale in those cases was that "Civigenics and its employees are state actors because they are employed by the State of Delaware to provide treatment of inmates and, therefore, acted under color of law for purposes of § 1983 when undertaking their duties in treating the plaintiffs' addictions." *Hamilton*, 2005 WL 418023 at *4 (cited by *Castillo*). The *Hamilton* court relied on the

Supreme Court decision in *West v. Atkins*, wherein the Supreme Court held that a physician employed directly by a state to provide medical services to prison inmates at a state prison hospital "act[s] under color of law for purposes of § 1983 when undertaking his duties in treating [plaintiff's] injury." 487 U.S. 42, 54 (1988). *West* did not involve a § 1983 claim against a medical service corporation itself (nor a defense of sovereign immunity by such a corporation); it was a suit against a doctor providing medical services to inmates at a state-run hospital. There was in *West* a direct nexus between the defendant physician and the State, for whom he was employed.

To summarize, to state a claim under § 1983, a plaintiff must allege the violation of a Constitutional right and must show that the alleged violation was committed by a person acting under color of state law. *Id.* at 48 (citations omitted). A corporation under contract with the state can be considered a "person" subject to § 1983 liability so long as it is not considered an "arm of the state" for Eleventh Amendment purposes. *See Monell*, 436 U.S. at 690 n. 54. The court in *Hamilton* (and *Castillo*) did not conduct the type of analysis of whether Civigenics was an "arm of the state" as mandated by the Third Circuit in *Independent Enterprises Inc.* Instead, the *Hamilton* court, relying on *West*, succinctly declared that the Civigenics was immune from suit under § 1983. *See Hamilton*, 2005 WL 418023 at *5 (dismissing claims against Civigenics as well as its employees) (citing *West*, 487 U.S. at 48-54)). For these reasons, the court finds *Hamilton* unpersuasive.

### B. Policy or Custom

Having established that the Eleventh Amendment does not bar plaintiff's claims

against CMS, the court next addresses whether CMS may be held liable under § 1983 for the allegedly unconstitutional acts of "Nurse Beth." Respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, therefore, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories. *See Natale v. Camden County Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003). CMS can, however, be considered directly liable for the acts of an employee if those acts are deemed the result of a policy or custom of CMS, where the inadequacy of an existing practice is so likely to result in the violation of constitutional rights that CMS can reasonably be said to have been deliberately indifferent to plaintiff's serious medical need. *See id.* at 584 (citations omitted). "'Policy is made when a decisionmaker possess[ing] final authority to establish . . . policy with respect to the action issues an official proclamation, policy or edict.'" *Miller v. Corr. Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992) (alteration in original) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citing *Andrews*, 895 F.2d at 1480; *Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989)).

Plaintiff alleges that he was informed on July 20, 2006 that a particular nurse, "Nurse Beth," used needles on multiple inmates between April 10, 2006 and July 9, 2006. (D.I. 1 at ¶ 14) Plaintiff does not identify any official policy on the part of CMS that allegedly contributed to these incidents. The issue is whether plaintiff has identified

a "custom" that may suffice to demonstrate deliberate indifference.

Plaintiff asserts that (1) a December 29, 2006 letter by the Department of Justice (following a nine month investigation) alleged that the medical care at HYRCI is "deficient" and unconstitutional; and (2) a July 2007 report by the State's independent prison monitor (Joshua W. Martin III) "accused CMS of failing to recruit and train qualified medical professionals" due to financial reservations. (*Id.* at ¶¶ 18-24) That is, "[t]he quality of medical care provided to inmates in DOC institutions, such as HYRCI, from April 2006 to July 2006 was poor." (*Id.* at ¶ 24)

With respect to plaintiff's § 1983 claim, plaintiff alleges that defendants Taylor, Talley, and Williams,[1] acting in both their "individual and official capacities," have "adopted and implemented policies which were intended to contain the costs of providing medical services to the inmates, including plaintiff, and which they either knew or should have known would cause CMS to provide personnel who were not qualified or properly trained to provide medical services, and to provide medical care that did not meet the minimum requirements of the Eighth Amendment." (*Id.* at ¶ 26(a)) Plaintiff also alleges that these defendants "adopted and implemented policies and practices which encouraged CMS to provide for treatment for plaintiff's medical condition that did not meet the minimum requirements of the Eighth Amendment." (*Id.* at ¶ 26(b)) In the

---

[1]These defendants have not moved to dismiss. Notices of appearance on behalf of defendants Taylor, Danberg, Williams, Morgan, and Taylor have been filed. (D.I. 12, 18) The court issued an order to show cause why defendants Taylor and Williams should not be dismissed for failure to have service effected upon them on November 24, 2008. (D.I. 21) Plaintiff has since served defendant Taylor (*see* entry of January 12, 2009) and the court granted plaintiff a third extension of time to serve defendant Williams on February 9, 2009 (D.I. 27). The third deadline (March 2, 2009) has passed, and the court dismisses plaintiff's claims with respect to defendant Williams.

portion of its complaint addressing CMS, plaintiff did not mention a specific policy or practice of CMS corresponding to these claims. (*Id.* at ¶ 27) CMS, according to plaintiff, "**acting through its agents, servants and employees**, through their failure to provide adequate medical care, acted with deliberate indifference to plaintiff's needs" by failing to provide "constitutionally adequate medical care of plaintiff's diabetic condition." (*Id.* at ¶ 27(a)) (emphasis added) As noted previously, respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983. *See Natale*, 318 F.3d at 584.

The only CMS practice identified in the complaint is CMS's desire to employ low-cost, unqualified medical professionals. One of these professionals, "Nurse Beth" in particular, is alleged to have committed medical negligence between April and June 2006. There is no allegation that she did so with CMS's knowledge or permission or that any other nurses engaged in the same behavior. Plaintiff has not alleged that CMS failed to supervise its staff or identified any performance review practices or policies with respect to its nurses. Plaintiff avers that CMS failed to provide personnel who were "qualified" or "properly trained," but does not allege that it failed to screen (or train[2]) its medical employees.

The essence of plaintiff's complaint is that defendants Taylor, Talley, and Williams sought to save CMS money by hiring unqualified medical professionals such

---

[2] As the Supreme Court has stated, a failure to train may be actionable under § 1983 if "the program is adequate to the tasks the particular employees must perform" and "the identified deficiency in the training program [is] closely related to the ultimate injury." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379 (1989). There is no such allegation here.

9

as "Nurse Beth." It is the actions of "Nurse Beth," and not CMS, that form the basis of the complaint. The court finds plaintiff's general averment that CMS is "unwilling[ ] to spend [the] money necessary to get qualified staff" (D.I. 1 at ¶ 22) does not identify a particular policy or custom sufficient to maintain this § 1983 claim.

### C. State Law Claim

CMS has not demonstrated that it is a state actor and, therefore, its assertion that it is immune from suit under the State of Delaware Tort Claims Act (18 Del. C. § 6801 et seq.), pursuant to 10 Del. C. § 4010, fails.[3] (D.I. 8 at 6) In support of his medical negligence claim, plaintiff has submitted an affidavit of merit by a registered nurse and legal nurse consultant as to defendants CMS and "Nurse Beth" as required by Delaware law. (D.I. 4); 18 Del. C. § 6853(a)(1).[4] CMS provides no other rationale for dismissing plaintiff's state medical negligence claim, and its motion is denied.

---

[3] [10 Del. C. § 4010 provides] no reference to immunity for individual entities performing traditional governmental functions through independent contractual relationships and there is absolutely nothing to suggest the General Assembly ever intended to extend this immunity beyond the limited classification of state employees or those serving on government boards. This is not only logical but practical since to interpret otherwise would open the door to allow every independent entity, who performs some work for a government agency, to claim that it is somehow encompassed within th[e] statute and the immunities that flow from it.

*Syvy v. Landmark Engineering, Inc.*, Civ. No. 02C-02-060WCC, 2005 WL 791391, *1 (Del. Super. Mar. 31, 2005).

[4] Plaintiff generally alleges that "[d]efendant CMS, acting through its **agents, servants and employees,** failed to render and provide medical services in conformity with the applicable standards of care and committed medical neglivence within the meaning of 18 Del. C. § 6801." (D.I. 1 at ¶ 30) It does not appear, therefore, that plaintiff asserts medical negligence against defendants Taylor, Danberg, Morgan, or Talley, and the affidavit does not name these individuals. (D.I. 4)

10

## V. CONCLUSION

For the foregoing reasons, CMS's motion is granted in part and denied in part. An appropriate order shall issue.